**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Chief Judge Marcia S. Krieger**

Civil Action No. 13-cv-03481-MSK-CBS

**MONIQUE M. JAMES, an individual,**

 **Plaintiff,**

v.

**DEBORAH LEE JAMES, Honorable Secretary of the Air Force,**

 **Defendant.**

---

**OPINION AND ORDER GRANTING**
**MOTION FOR SUMMARY JUDGMENT**

---

 **THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment (**#26**), the Plaintiff's Response (**#27**), and the Defendant's Reply (**#28**).

**ISSUES PRESENTED**

 In her Complaint (**#1**) the Plaintiff, Monique M. James, raises three claims against Defendant, Deborah Lee James in her capacity as Secretary of the United States Air Force (the Air Force), under Title VII, 42 U.S.C. § 2000e: (1) hostile work environment "based on harassment (race)"; (2) race discrimination; and (3) retaliation.[1] The Air Force moves for summary judgment on all claims.

**MATERIAL FACTS**

---

[1] The Complaint originally raised five claims for relief. However, two claims were dismissed by the parties' joint Stipulation (**#17**).

Based upon the evidence submitted by the parties, the undisputed material facts[2] are as follows.  Ms. James, who is African American, is a civilian employee of the Air Force, assigned to the 21st Communications Squadron (21st CS), 21st Space Wing, at Peterson Air Force Base. In January, 2010, Ms. James was appointed the Freedom of Information Act ("FOIA") and Privacy Act Manager.

Ms. James, in her deposition, describes her duties as "process[ing] all FOIA cases as well as privacy cases, promot[ing] privacy awareness and protection of personal information."  Her FOIA duties involve reviewing FOIA cases, whereas her duties as Privacy Act Manager require that she handle personal information breaches and privacy complaints. She also conducts privacy training, including instruction on what constitutes a breach and what personal information is releasable.

In June or July of 2010, the 21st CS command changed, and Lieutenant Colonel Kathy Craver (now, Col. Craver) assumed leadership.  In her deposition, Ms. James testified that when she met Col. Craver for the first time, Col. Craver "looked her up and down" and said, "you're not qualified for this job," a statement Ms. James alleges was prompted by the color of her skin. Around the same time, a new 1st Lieutenant, Jared Sayler (now, Cpt. Sayler) became Ms. James's immediate supervisor.

### 1.  Ms. James's Reassignment

In February 2011, there was a privacy breach in the 21st CS.  The Air Force submitted a stipulation to the Court in which it verifies that when there is a breach, notice of the breach is required to be sent by the office responsible for the breach. In the case of the February 2011 breach, it was Ms. James's responsibility to report this situation "as the [unit's] FOIA/PA manager." According to the stipulation, the investigation of the February 2011 breach revealed

---

[2] Where the facts are in dispute, the Court has construed them most favorably to the non-movant.

that "proper notifications were made in a timely manner." Despite this, the evidence, including statements prepared for the EEOC investigation, suggests that Cpt. Sayler and Col. Craver believed that Ms. James was at least partially at fault for a delayed notice of the breach. Cpt. Sayler drafted an Oral Admonishment noting that Ms. James did not comply with orders regarding the February 2011 breach and, more generally, with orders to provide weekly status updates of FOIA cases and privacy breaches. However, Cpt. Sayler testified that the Oral Admonishment was never issued to Ms. James because other civilian personnel determined that it would not be appropriate to issue it to Ms. James because she had no prior record of disciplinary concerns. In his testimony, Cpt. Sayler stated that, nevertheless, he believed Ms. James was unwilling to "perform her duties to specification."

In August 2011, Col. Craver reassigned Ms. James to act as Privacy Act Assistant Manager.[3]  In their affidavits, both Col. Craver and Cpt. Sayler state that Ms. James was reassigned because she was very busy, working heavy hours, and because they believed that reassigning some of her duties might avoid late notifications of privacy breaches in the future. Cpt. Sayler states that Ms. James appeared to need assistance and the new assignment would allow her to focus on FOIA cases more heavily while passing some of the Privacy Act duties to others. He further stated in a declaration prepared in connection with the EEO investigation, that Ms. James was one of nine people who were reassigned, and that positions in her entire branch were "revamped . . . to better distribute duties."  Ms. James's testimony confirms that from January to August 2011 she was very busy. In fact, she admits that she was working an average of fifty hours a week, sometimes longer, as well as several weekends.

---

[3] The evidence varies in whether the 21st CS referred to the position as "Alternate Manager" or "Assistant Manager." For ease of reference the Court will refer to this title as "Privacy Act Assistant Manager."

Ms. James viewed the reassignment as an unwarranted demotion. Another civilian employee, Charles Springs, states in a declaration that "Ms. James did everything according to the AFI but she was still removed from being the Primary." An email written in July 2011 by another FOIA and Privacy Act Manager, Sherrie Crochunis, stated that "Truly Ms. James was on top of all FOIA/Privacy Act issues until the last 8-12 months" (though this comment appears to refer only to Ms. James's 2010 performance).

Following the reassignment, Ms. James's pay and benefits and FOIA duties remained the same. As to Privacy Act duties, the only evidence presented is the testimony of Cpt. Sayler that Ms. James retained "some," but not all of them.  Within four to five months, in January 2012, Ms. James was reappointed as Privacy Act Manager.[4]

Ms. James contends that this reassignment was racially motivated.  Evidence of racial discrimination consists of her belief and that of Mr. Springs, who states that, "it just seemed that everyone who had a problem with [Cpt.] Sayler and [Col] Craver was of color such as myself."[5] But neither Ms. James nor Mr. Springs ever heard Cpt. Sayler or Col. Craver make racial comments. Nor did Ms. James hear anyone else in her unit make racist comments or bring racial comments by either Col. Craver or Cpt. Sayler to her attention.

## 2.  Memorandum of Counseling Issued to Ms. James

Shortly before her reassignment, in July 2011, Ms. James took two weeks of vacation. Ms. James submitted her leave via an electronic database, and her request was approved by Steven Stengel, who was temporarily acting in command in Cpt. Sayler's absence. Prior to her leaving, Ms. James met with Cpt. Sayler to discuss upcoming projects, including a Privacy Act

---

[4] The record is unclear as to who specifically reappointed Ms. James to Privacy Act Manager.
[5] In her deposition, Ms. James makes a passing reference to an "Airman Fryer," whom she contends was also treated unfavorably by Col. Craver because of his race, however she makes no mention of any further details or bases for this belief.

flowchart, but she did not verbally inform him that she would be on vacation the following weeks. Ms. James instead told Cpt. Sayler that she would unable to complete the flowchart by July 15, 2011 "because of new work assignments." When Ms. James returned from her vacation, Cpt. Sayler had a discussion with her regarding her failure to inform him she would be out of the office.  After this incident, Cpt. Sayler directed all civilian employees to give him in person notice of any scheduled leave or vacation.

After the miscommunication, and while Ms. James was still on vacation, Cpt. Sayler drafted a "Memorandum of Counseling – Unacceptable Conduct" ("MOC") which was issued to Ms. James on October 14, 2011. The MOC stated that Ms. James's failure to inform Cpt. Sayler of her leave was unprofessional.  Specifically, it read, "At no time during our conversation, did you communicate your leave/two-week vacation plans to me or the fact that you were not going to be at work to complete the FOIA follow-up actions we discussed and you confirmed that you would do.  Additionally, you failed to brief me . . . on the status of the FOIA program before you left so that we could continue to work . . . in your absence."  It also referenced the reason provided by Ms. James which Cpt. Sayler perceived as inaccurate: "you told me you could not meet the 15 Jul 11 deadline because of new work requirements when in fact, you failed to meet the [deadline] because you were not present or available due to your vacation plans, not new work requirements."

### 3.  Ms. James's Complaints

Ms. James filed three internal Inspector General (IG) Complaints,[6] in which she alleged that Cpt. Sayler "abus[ed] his authority" and "created a hostile work environment," due to what she characterized as conflicting ideas in how Privacy Act cases should be handled.

---

[6] Her first IG complaint was apparently lost before it was reviewed, and is not in the record. In her third IG complaint, Ms. James stated that this first complaint was submitted on March 24,

On September 28, 2011, Ms. James filed an informal EEO complaint, alleging racial discrimination based on her job reassignment. She amended the complaint in October to add a charge of reprisal (retaliation) based on issuance of the MOC.  She filed a formal EEO complaint on December 16, 2011.  Her final complaint alleged that (1) she was discriminated against on the basis of race when she was reassigned from Privacy Act Manager to Assistant Privacy Act Manager and (2) the MOC was issued in retaliation for her protected activity, namely, her EEO complaint. [7]

In this action, Ms. James asserts three Title VII claims: (1) that she was subjected to an unlawful racially hostile work environment; (2) that her reassignment to Assistant Privacy Act Manager subjected her to unlawful racial discrimination; and (3) that issuance the MOC was unlawful retaliation for her engagement in protected conduct.  For various reasons, discussed below, the Air Force argues Ms. James is unable to make a *prima facie* showing on any claim.

### STANDARD OF REVIEW

Fed. R. Civ. P 56 facilitates the entry of a judgment only where no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is warranted when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).  A factual dispute is "genuine" if the evidence presented in support of and in opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

2011. The record does not contain the particular dates the second and third IG complaints were filed.

[7] On January 17, 2013, the Department of the Air Force issued its Report of Investigation and Investigative File. The Air Force notified Ms. James that an investigation would be conducted into her two claims that her reassignment was racially motivated and that the MOC issued to her was retaliatory. The Notice instructed that, should Ms. James object to the characterization of her complaint, she must do so via written statement to the EEO office.  The Department of the Air Force issued a Final Agency Decision on September 27, 2013.

(1986). When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

Substantive law governs the elements that must be proven for a particular claim or defense, the standard of proof, and which party bears the burden of proof. *See Anderson*, 477 U.S. at 248; *Kaiser–Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). Where the moving party does not bear the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or claims that the non-moving party is obligated to prove. *See* Fed.R.Civ.P. 56(c)(1)(A); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). Once the moving party has met its burden, the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991); *Perry,* 199 F.3d at 1131. If there is insufficient evidence from which a reasonable fact-finder could find for the non-moving party as to each element of its claim, summary judgment is proper. *Adams v. American Guarantee & Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000); *White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

## ANALYSIS

Under Title VII, an employer may not discriminate on the basis of race, color, religion, sex, or national origin, or take adverse action against an employee who has engaged in protected conduct. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *Twigg v. Hawker Beechcraft Corp.,* 659 F.3d 987, 998 (10th Cir. 2011).

### 1.  Hostile Work Environment Claim

The Air Force argues that it is entitled to summary judgment on Ms. James's hostile work environment race discrimination claim because Ms. James failed to exhaust her administrative remedies prior to bringing this action.

It is now somewhat unclear whether the obligation to exhaust administrative remedies deprives the court of subject matter jurisdiction or alternatively, exhaustion of remedies is simply a condition precedent to bringing suit[8], but regardless of the characterization,  if the plaintiff has not exhausted available administrative remedies, the claim cannot proceed. *Jones v. Runyon,* 91 F.3d 1398, 1399 (10th Cir. 1996); *accord Annett v. Univ. of Kansas*, 371 F.3d 1233, 1238 (10th Cir. 2004); *Freppon v. City of Chandler*, 528 Fed. App'x 892, 898 (10th Cir. 2013).  This is because the exhaustion requirement is intended to: (1) give notice of the alleged violation to the employer; and (2) facilitate internal or administrative resolution of the issues in lieu of costly litigation. *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003); *see Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1185 (10th Cir. 2007).

To exhaust administrative remedies, a federal employee complaining of Title VII violations may either file a charge with the EEOC (as any private-sector employee would), or, pursue a separate process through the employing agency's EEO Officer.  42 U.S.C. § 2000e-5

---

[8] The Tenth Circuit has long deemed defects in a plaintiff's exhaustion of administrative remedies to be of jurisdictional significance. *See, e.g., Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005); *Jones v. Runyon*, 91 F.3d 1398, 1399-1400 (10th Cir. 1996). In a recent case, however, that court declared that at least one type of defect occurring at the administrative stage – a plaintiff's failure to verify the charge of discrimination – is not a defect of jurisdictional significance, but rather, merely creates a defense that a defendant can either raise or waive at the appropriate time. *Gad v. Kansas State Univ.*, 787 F.3d 1032, 1035-43 (10th Cir. 2015). *Gad* does not purport to overrule existing precedent, but its reasoning – that Congress must expressly specify that a compliance with a particular process is essential to a court's exercise of jurisdiction in order for a court to deem that a defect in that process is a matter of jurisdictional import – suggests that courts need to exercise caution in determining defects to be of jurisdictional significance. This Court need not opine as to whether failure to exhaust a claim by not explicitly raising it is a jurisdictional bar or a waivable defense, because here, the Air Force raised the defense in its Answer (**#18**) and continues to press it.

8

(EEO process); 29 C.F.R. § 1614.101 *et seq.* (EEO process); *Coffman v. Glickman*, 328 F.3d 619, 624 (10th Cir. 2003). Pursuit of a claim through the full EEO process constitutes exhaustion. *Dossa v. Wynne*, 529 F.3d 911, 914 (10th Cir. 2008).

Ms. James invoked the EEO process. Under that process, an aggrieved employee contacts the agency's EEO Counselor within 45 days of the act of which she complains, and the Counselor then undertakes informal efforts to investigate and resolve the matter. 29 C.F.R. §1614.105(a)(1). If the Counselor is unable to resolve the issue within a specified period, the employee has 15 days from the end of the counseling period to file a formal complaint with the agency. 29 C.F.R. § 1614.106.  The agency then begins an investigation into the complaint. 29 C.F.R. § 1614.108.  At the conclusion of the investigation, the agency presents the employee with a copy of the investigative file, at which point the employee may either demand a hearing before an EEOC Administrative Judge or request a final decision on the complaint from the agency.  29 C.F.R. § 1614.108(f).  A "final decision" makes findings with regard to each issue in the complaint and, if appropriate, prescribes a remedy.  29 C.F.R. § 1614.119(b).  The "final decision" also includes issuance of a "Right to Sue" letter that completes the administrative process.  29 C.F.R. § 1614.110(b).

Both schemes require that the employee's charge or agency complaint specifically identify the claims he or she ultimately will assert in litigation. *Simms v. Okla. ex rel Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999), *abrogated on other grounds by Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227 (10th Cir. 2014). Claims not identified during the exhaustion process cannot be pursued in federal court.  *See Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1226 (10th Cir. 2014); *see also Mitchell v. City & Cnty. of Denver*, 112 Fed App'x 662, 666 (10th Cir. 2004).  The law is quite clear that, when an employee's claim

is based on discrete adverse actions, the claim must be expressly included in the employee's EEO or EEOC complaint. *Martinez*, 347 F.3d at 1210-11.

Ms. James's EEO complaint listed alleged improper action in two contexts – her reassignment and the issuance of the MOC.  She did not list any racial discrimination in the form of a hostile work environment.  She contends, however, that the Court should liberally interpret her Complaint to include a hostile work environment claim because it can be reasonably expected to follow from the claims actually asserted in the agency complaint can be deemed exhausted.[9]  *See MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005).  This expansion is sometimes referred to as application of the "reasonably related" test.  It allows a judicial complaint to encompass any discrimination like or reasonably related to the allegations made in the EEOC charge. *Martinez*, 347 F.3d at 1210.  A claim is reasonably related if the conduct complained of would fall within the scope of the administrative investigation, or could be expected to grow out of the expressly-raised charges.  *See Deravin v. Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003).  Courts have adopted this more lenient view because administrative charges are often filed by employees without the benefit of trained legal counsel. A liberal approach may also be particularly warranted where the additional claim is creation of a hostile

---

[9] *Eisenhour* suggests that, at least in claims involving discrete actions, the Tenth Circuit has abandoned the "reasonably-related" test.  There, the Circuit rejected plaintiff's contention that she exhausted her administrative remedies, concluding that she could not bring a retaliation claim not expressly brought before the EEOC but which, according to plaintiff, was "reasonably related" to the sexual harassment claim that was properly before the EEOC.  744 F.3d at 1226; *see also Annett*, 371 F.3d at 1238 (while previously, a court would proceed to examine whether an employment claim not expressly alleged in an EEOC charge was reasonably related to those alleged to determine if the court may address, recent case law has "foreclosed this line of inquiry").  The Tenth Circuit stated, "[a]lthough this argument [that the claim was reasonably related] might once have been viable, it is no longer." *Id.*  But a hostile work environment claim is different in that it is not based on a discrete action.  Thus, the Court assumes, for the purposes of analysis in this matter, that the "reasonably related" test remains applicable here.

work environment, as such a claim necessarily hinges on several lesser actions of varying degrees occurring over a series of days or even years rather than a discrete act.

To determine whether Ms. James's racially-hostile work environment claim is reasonably related to the claims she expressly raised, the Court looks to the EEO complaint, the investigation and the Final Agency Decision.  As noted, Ms. James's December 2011 EEO Complaint raised only the two claims – retaliation based on issuance of the MOC and race discrimination based on her reassignment.  After receiving her complaint, the agency notified Ms. James of the scope of its investigation. The Notice read:

> "The agency will investigate the following claims based on the complaint [Ms. James] submitted:
>
> a. 'Whether the complainant (Ms. Monique M. James) was discriminated against on the basis of race (Black) when on 4 August 2011, at Ct. Col. Craver['s] behest, she was appointed Assistant PA Manager which she considers a demotion.'
> b. 'Whether the complainant (Ms. Monique M. James) was discriminated against on the basis of reprisal (for having filed Instant EEO complaint) when on 14 October 2011, 1Lt. Sayler issued her a [MOC] which she avers was undeserved.'"

The Notice also stated that "only the claims described [above] have been accepted."  It informed Ms. James that, if she disagreed with the description of the claims, she was required to submit a statement to that effect to the EEO office.  Ms. James did not file any such statement or otherwise object to the agency's interpretation of her complaint.

In the Final Agency Decision, the investigator discussed – but rejected – the notion that Ms. James's complaint encompassed a claim of race discrimination by hostile work environment. The investigator mentioned that Ms. James's IG complaints allege that she was subjected to a hostile work environment, but found that the complaints contained  "no allegation of discrimination based on any protected class."

Nevertheless, Ms. James argues that her hostile work environment claim was reasonably related to the claims that she expressly asserted.  Ms. James directs the Court to her IG complaints, copies of emails she submitted during the course of the investigation, and a summary of her testimony.  In her IG complaints, Ms. James alleged that Cpt. Sayler made comments towards her such as "I don't have the time, it is not my job to do your job for you," or references to needing to "hand-hold" for Ms. James.  She also alleged that he continually asked her for details of her medical appointments in violation of her privacy.  These complaints tangentially relate to the EEO reassignment claim, but there is nothing that ties such actions to Ms. James race.

In addition, the Court primarily considers the claims submitted to and considered by the EEOC, not the IG.  In that vein, Ms. James correctly notes that the investigator commented that Ms. James complained of a hostile work environment created by Col. Craver and Cpt. Sayler's "decision to insert themselves into the FOIA/PA process." As an example, she stated that she experienced hostility after a dispute with Col. Craver over FOIA confidentiality requirements, but again, she presents nothing to suggest that the dispute or resulting hostility was related to her race. She characterizes Col. Craver and Cpt. Sayler's actions as micromanagement, not racially discriminatory.

In sum, the crux of Ms. James's allegations of a hostile work environment are that it was caused by disputes over confidentiality of FOIA and privacy cases, and Col. Craver and Cpt. Sayler's micromanaging of Ms. James work.  There is no evidence by way of incident, statement, policy or disparate treatment[10] that indicates that such controversies were based upon

---

[10] The facts of *Dossa v. Wynne* are instructive in contrast to those presented here. In *Dossa*, the plaintiff introduced facts in administrative proceedings to show that she suffered adverse action based on her gender and national origin.  In particular, she proffered evidence demonstrative of disparate treatment. The Tenth Circuit concluded that presenting this particular evidence below

racial animus. Thus, Ms. James did not identify a racially hostile work environment in the EEO process, so as to exhaust that claim.

But even if the Court were to assume that the claim was a related claim and therefore is exhausted, Ms. James has not come forward with a sufficient *prima facie* showing to support it. To do so she must show that, under the totality of the circumstances: (1) the harassment was pervasive and severe enough to alter the terms, conditions, or privilege of employment and (2) the harassment stemmed from racial animus. *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998). To demonstrate racial animus the plaintiff must present evidence of a steady and continuous barrage of opprobrious racial comments. *Bolden v. PRC, Inc.*, 43 F.3d 545, 551 (10th Cir. 1994). Assuming without deciding that Ms. James has sufficiently alleged harassment severe enough to be actionable, she has not presented sufficient evidence that it was racially motivated. Indeed, her only evidence of racial animus beyond her belief is the statement of Mr. Springs that it "seemed" the only employees who had problems with Col. Craver or Cpt. Sayler were "people of color."

Thus, either because Ms. James failed to exhaust her administrative remedies regarding the hostile work environment claim or because she has not presented evidence sufficient to state a *prima facie* case for a race-based hostile work environment, the Air Force is entitled to summary judgment on this claim.

### 2. Discrimination Based on Race – Reassignment to Privacy Act Assistant Manager

Ms. James contends that the Air Force discriminated against her based on her race by reassigning her to Privacy Act Assistant Manager.

---

was sufficient to conclude that the plaintiff exhausted her administrative remedies, as to unstated claims.

Title VII claims, including racial discrimination, are analyzed using the burden-shifting framework enumerated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Crowe v. ADT Sec. Servs. Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011). A plaintiff bears the initial burden to establish a *prima facie* case of discrimination. *Id.* Once a *prima facie* case is established, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant is able to do so, the burden returns to the plaintiff to demonstrate that the defendant's proffered reason is pretextual. *Id.*[11]

Ms. James must establish a *prima face* case for race discrimination by introducing evidence to show that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See E.E.O.C. v. PVNF, L.L.C.,* 487 F.3d 790, 800 (10th Cir. 2007); *Jones v. Denver Post Corp.*, 203 F.3d 748, 752-53 (10th Cir. 2000). The Air Force does not dispute that Ms. James is a member of a protected class, but it argues that Ms. James is unable to establish either of the remaining two elements.

The Court first examines if the evidence presented by Ms. James is sufficient to create a genuine dispute of material fact as to whether she suffered adverse action. The Tenth Circuit

---

[11] Ms. James argues that the *McDonnell Douglas* framework does not apply here because there is direct evidence of racial discrimination. She points to Col. Craver's statement that she was not qualified for her position "upon seeing Plaintiff's skin color." This is not direct evidence of discrimination. Ms. James admits that Col. Craver never made any express statement linking Ms. James' race to Col. Craver's employment decisions. Indeed, even if Col. Craver made racially discriminatory statements generally (and the record reveals none), such statements are not direct evidence of causation on the employment decision. *See Ramsey v. City & County of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990); *see also Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (direct evidence of discrimination essentially requires an admission by the decision maker that his decisions were based on the prohibited animus). Instead, any alleged statements or actions by Col. Craver provide only circumstantial evidence of discriminatory intent because they "require the trier of fact to infer that discrimination was a motivating cause of an employment decision." *See EEOC v. Wiltel, Inc.*, 81 F.3d 1508, 1514 (10th Cir. 1996).

liberally defines an adverse employment action, and a court examines whether a certain decision constitutes an adverse action on a case by case basis, considering the facts particular to the situation. *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007).  At a minimum, a plaintiff must show an "objective demotion," or tangible change, such as a decrease in pay or a material change in duties; something beyond "a mere inconvenience or alteration of job responsibilities." *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 635 (10th Cir. 2012); *Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004); *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998); *see Forkkio v. Powell*, 306 F.3d 1127, 1130-31 (D.C. Cir. 2002) Purely subjective injuries, such as dissatisfaction with a reassignment or loss of reputation are not adverse actions. In other words, a plaintiff must show some "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" to demonstrate an adverse action. *Dick v. Phone Directories Co.,* 397 F.3d 1256, 1268 (10th Cir. 2005) (internal quotations omitted); *Wells v. Colorado Dept. of Transp.*, 325 F.3d 1205, 1214 (10th Cir. 2003); *see Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004).

For example, an employer's denial of an employee's request to transfer to a new position with the same salary, benefits, and job duties is not an adverse action. *Compare Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 (10th Cir. 1998); *and Wheeler v. BNSF Ry. Co.*, 418 Fed. App'x 738, 745-46 (10th Cir. 2011); *with Nance v. Maxwell Fed. Credit Union*, 186 F.3d 1338, 1340-41 (11th Cir. 1999). By the same token, a change in job title, where both positions involved similar responsibilities and the same pay, is not adverse action. *See Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006). Nor is reassignment of an employee to the same job but to a less desirable shift. S*ee Daniels*, 701 F.3d at 635. In fact, the Tenth Circuit has held that, even under

the lesser burden required to prove an adverse action in the retaliation context, reassignment of job duties was not actionable without a resulting tangible disadvantage, and a plaintiff must allege more than bald personal feelings that a reassignment was disadvantageous. *Semsroth v. City of Wichita*, 555 F.3d 1182, 1184-85 (10th Cir. 2009). Likewise, a loss of authority that was not severe or prolonged is not materially adverse action. *Wells*, 325 F.3d at 1214; *see Kirk v. City of Okla.*, 72 Fed App'x 747, 752 (10th Cir. 2003).

Ms. James claims that her reassignment from Privacy Act Manager to Privacy Act Assistant Manager in August 2011 was an adverse action – a demotion. In addition to her own personal feeling, she offers Mr. Springs's statement that Col. Craver and Cpt. Sayler "made [Ms. James] the alternate even though she actually sat in the position as Primary" and that "Ms. James did everything according to [protocol] but was still removed from being the Primary." Ms. James admits that her pay and benefits and FOIA duties remained the same, but the evidence suggests there was some reduction in Ms. James's Privacy Act duties. The reassignment was temporary, and no evidence was presented from which the Court might infer that the reassignment could adversely affect Ms. James's future employment prospects or chance at internal promotion.

This showing is thus insufficient to establish that the reassignment amounted to an adverse action. Although it may have offended Ms. James, particularly when accompanied with micromanagement by her superiors, the reassignment was not a significant change in employment status or responsibilities, and there is no evidence that it affected her compensation, benefits or employment prospects. Accordingly, Ms. James has not come forward with sufficient evidence to demonstrate a *prima facie* claim of race-based discrimination under Title VII. The Air Force is entitled to summary judgment on this claim.

### 3.   Retaliation Claim

Turning to Ms. James's claim that Cpt. Sayler's issuance of the MOC was unlawful retaliation, she must show that: (1) she engaged in protected conduct; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected conduct and the adverse action. *Twigg,* 659 F.3d at 998. The Air Force does not appear to contest that the MOC was an adverse employment action.[12]  It also concedes that the filing of Ms. James' EEO complaint was protected conduct, but it disputes that Ms. James's IG complaints could be construed as protected conduct under Title VII.  Finally, it argues that Ms. James cannot show causation or, alternatively, that the Air Force's nondiscriminatory reason for issuing the MOC was pretextual.

Beginning with protected conduct, it is undisputed that Ms. James filed her EEO charge on September 28, 2011. It is less clear whether the filing of IG Complaints constituted protected conduct, and if so, when such conduct occurred.

Protected activity encompasses any opposition by the employee to an employer's unlawful practices or actions. *Reinhardt v. Albuquerque Pub. Sch. Bd. of Ed.*, 596 F.3d 1126, 1132 (10th Cir. 2010). The employee need only have a reasonable, good-faith belief that the

---

[12] Were the case to proceed to trial, the Court would have serious doubts that Ms. James would be able to establish that the issuance of the MOC was an adverse employment action. Although the range of conduct that amounts to an adverse action for purposes of a retaliation claim is broader than that which is needed to state a race discrimination claim, not all harms are actionable. *See Barone v. United Airlines, Inc.*, 355 Fed. App'x 169, 183-84 (10th Cir. 2009). In the retaliation context, an adverse action must be significant enough that it might dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006); *see Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1090 (10th Cir. 2007). A written warning or reprimand generally does not rise to the level of adverse action for purposes of a retaliation claim unless a plaintiff can show that it increased the likelihood that she would be fired, undermined her current job status, or affected her future employment. *Medina v. Income Support Div.*, 413 F.3d 1131, 1137 (10th Cir. 2005); see also *See Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon Cnty.*, 587 F.3d 1223, 1238-39 (10th Cir. 2009).  On this record, the evidence is thin to non-existent that the MOC would have such an effect. The MOC states that it was "nondiscriplinary," it was only temporarily part of Ms. James's personnel file, and there is no evidence of any negative consequences it caused or are likely to be caused.

conduct being complained of is unlawful under Title VII. *Love v. Re/Max of Am., Inc.*, 738 F.2d 383, 385 (10th Cir. 1984); *see Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 269-70 (2001).

Ms. James's IG complaints do not allege practices that are unlawful under Title VII. Instead, Ms. James alleged that she was subjected to a hostile work environment because of conflicting visions about how Ms. James should be supervised and how certain confidential matters should be handled. But the complaints make no suggestion, implicitly or explicitly, that racial animus motivated such treatment. Thus, the Court finds that the filing of the IG complaints were not protected conduct in this context. The sole protected conduct for the retaliation claim is the filing of the EEO complaint.

The Court thus skips to the final element of a *prima facie* case – causation. Here, an inference of causation can be drawn from the close temporal proximity (less than three weeks) between the filing of the EEO complaint and issuance of the MOC. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).[13]

Having found Ms. James made a *prima facie* showing, the Court moves to the second and third *McDonnell Douglas* steps. In the second step, a defendant must proffer a legitimate, nondiscriminatory reason for the MOC. *McDonnell Douglas*, 411 U.S. at 802. A defendant's burden at this stage is exceedingly light, and the defendant need only produce admissible evidence which would allow the trier of fact to rationally conclude that the employment decision

---

[13] The Air Force claims there can be no inference of causation because Cpt. Sayler was unaware that Ms. James filed an EEO complaint when he issued the MOC. In support, the Air Force offers evidence that Cpt. Sayler drafted the MOC before Ms. James filed her EEO complaint, and Cpt. Sayler's deposition testimony that he was unaware of EEO complaint. But Ms. James has presented contradictory evidence, including that Col. Craver knew of the complaint, and that Col. Craver and Cpt. Sayler had daily meetings in which they might have discussed the complaint. Although Ms. James relies heavily on speculation as to what Col. Craver and Capt. Sayler might have discussed in order to bridge the gap between Col. Craver's knowledge of the EEO complaint and Capt. Sayler's knowledge, for the reasons set forth herein, the Court finds that it need not address that issue. Thus, the Court will assume, without finding, that Ms. James's evidence is sufficient to demonstrate Capt. Sayler's timely knowledge of the complaint.

was not motivated by discriminatory animus. *Swackhammer v. Sprint/United Mgmt. Co.*, 493

F.3d 1160, 1166 (10th Cir. 2007); *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir.

1999).

The MOC was issued because Cpt. Sayler believed that Ms. James's failure to inform

him that she would be on leave for two weeks – after he expressly asked her to complete certain

tasks during that time – was unprofessional. More specifically, Cpt. Sayler stated that he recalled

"having conversations with [Ms. James] during the week of July 11, 2011, about tasks to be

completed . . . Monday, July 18, 2011," including a Privacy Act flowchart. Ms. James told Cpt.

Sayler that she could not complete at least one of these tasks because of "new work assignments"

but never mentioned to Cpt. Sayler that she would be on vacation during this time. When Cpt.

Sayler later learned that Ms. James did not complete the tasks because of her vacation, he

believed that her reference to "new work assignments" was an "excuse." And he testified that, as

a result of Ms. James's failure to be forthcoming, another employee in her department had to

"pick up the high speed, really hot tasking . . . without any prior information from Ms. James on

how to accomplish the task that she had been assigned."  The Court finds that this explanation

could constitute a valid, nondiscriminatory reason for issuing the MOC.

The question then becomes whether there is evidence suggesting that this explanation is a

pretext for discrimination. To show pretext, a plaintiff must offer evidence demonstrating both

that the reason proffered by the employer is not true, and that the true reason for the adverse

action was retaliation. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-47

(2000).  It is not sufficient to present evidence that merely tends to discredit the employer. *See id.*

To show that a proffered reason is untrue, a plaintiff may present evidence that reveals

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

proffered legitimate reasons for its action that would lead a reasonable factfinder to find the proffered reason is untrue. *Plotke v. White*, 405 F.3d 1092, 1102 (10th Cir. 2005). A plaintiff might offer evidence that the employer's reason was post-hoc, or otherwise insincere, but evidence that an employer merely made a subjective mistake in perceiving the facts is not sufficient to show pretext.  The Court does not analyze whether an employer's actions were wise, fair, or even factually correct; rather, it looks only at whether the employer "honestly believed its reasons and acted in good faith." *See Bennett v. Windstream Comm'ns., Inc.*, 792 F.3d 1261, 1268 (10th Cir. 2015).

If the employee shows the employer's proffered reason to be untrue, she must ordinarily still proceed to show that, but-for her protected conduct, the employer would not have taken the adverse action. [14]*Univ. of Texas Southwestern Med. Center v. Nassar*, 133 S.Ct. 2517, 2534 (2013). It is not enough for the plaintiff to demonstrate that the protected conduct was merely a motivating factor. *Id.* An employer is thus entitled to judgment as a matter of law if the record conclusively reveals a nondiscriminatory reason for the employer's decision or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was uncontroverted evidence that no retaliation occurred. *See Reeves,* 530 U.S. at 148.

Ms. James focuses on several facts that, she contends, show that Capt. Sayler's proffered reasons for issuing the MOC are false. She first notes that the vacation issue occurred in July, but the MOC was not issued until October 14, after she filed the EEO complaint. The Air Force explains this discrepancy with Cpt. Sayler's affidavit and testimony, in which he explains that he

---

[14] True, in *St. Mary's Honor Center v. Hicks*, the Supreme Court noted that, in some instances, if an employee can prove that the employer's proffered reason for an adverse action is false it may be enough to permit an inference that retaliation was the true motive. 509 U.S. 502, 511 (1993). But when, as here, a plaintiff's showing of the falsity of the employer's proffered reason is weak, the plaintiff's showing is often insufficient to allow a reasonable inference that the employer's real reason was retaliation.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000).

began drafting the MOC while Ms. James was on leave. Cpt. Sayler states that he provided a draft of the MOC to an HR representative on September 1, received a revised draft back on September 15, then made additional edits and resent it to the HR representative, who was out of the office until October 4. The MOC was finally completed on October 13. Ms. James does not dispute this timeline. Thus, the undisputed facts demonstrate that Capt. Sayler began preparing the MOC while Ms. James was on vacation, well before she filed her EEO complaint on September 28. If this claim was not a retaliation claim subject to the "but for" test, the Court would be inclined to treat this disparity as sufficient for a showing of pretext.  However, with application of the "but-for" test, Ms. James must show that were it not for her filing the EEC complaint, the MOC would not have been issued. Despite the time discrepancy noted, it is uncontroverted that preparation of the MOC began before the EEO Complaint was filed. Thus, the filing of the complaint could not be the "but for" cause for issuance of the MOC.

Still, Ms. James identifies other incidents which she contends provides background evidence that Cpt. Sayler harbored animosity towards her. She offers emails containing comments by Cpt. Sayler to a HR representative expressing his dissatisfaction of Ms. James and a desire that she and Mr. Springs be given more performance reviews and accountability. Particularly, she refers to an email Cpt. Sayler wrote to the HR representative in which he stated that he would like to "strip as much responsibility from [Ms. James] as possible." She further directs the court to the Oral Admonishment accusing her of poor management of FOIA and Privacy Act matters, drafted by Cpt. Sayler but never issued to Ms. James. Finally, she offers a statement from a Maj. Robert Bepko attesting that there was "social contempt" towards Ms. James perpetuated by Cpt. Sayler, as well as the "superintendent and commander." Though such evidence suggests that Cpt. Sayler did not like or respect Ms. James, it is insufficient to

demonstrate that but-for Ms. James's protected conduct – the filing of the EEO Complaint - Cpt. Sayler would not have issued the MOC. Again, because Ms. James must show that the MOC would not have been issued but for her protected conduct, it is not enough for her to show that Cpt. Sayler may have been motivated by both permissible and impermissible considerations in deciding to act. Given the heavy burden of proof on Ms. James, she must demonstrate that the legitimate reasons proffered by Cpt. Sayler are not, of themselves, sufficient to justify the MOC. Because there is evidence that Cpt. Sayler set that process in motion long before Ms. James filed her complaint, the Court finds that she has failed to do so. As noted, with a retaliation claim, the protected conduct must be the "but for" cause for action, even if impermissible animus is shown.

Here, the Air Force's explanation for drafting MOC is, at least in part, unchallenged. The record contains substantial evidence concerning Cpt. Sayler's and Ms. James controversy over her vacation. The MOC is consistent with Cpt. Sayler's explanation of its genesis. In it, Cpt. Sayler wrote that during his July 15 conversation with Ms. James, they discussed tasks, including a flowchart, to be completed the following Monday, but on that Monday, Cpt. Sayler discovered that Ms. James was on leave. He identifies at least one other employee who scrambled to complete what would have been Ms. James's work. Ms. James does not dispute that Cpt. Sayler was unaware of her vacation, that she failed to inform him of her absence or that she failed to ensure that her work could be timely completed while she was gone. She does not dispute that Cpt. Sayler could have reasonably expected her, based on the nature of their conversations, to inform him of an upcoming vacation when they discussed tasks for her to be completed in the upcoming weeks. Moreover, Ms. James stated that Cpt. Sayler called her while she was on leave, angry because he did not know where she was. Lastly, the Air Force offers evidence that Cpt.

Sayler instituted a policy that *all* civilian employees inform him face to face of their vacation plans (which Ms. James does not dispute).  This all supports the proffered reason for the MOC.

The question remains whether there is evidence that issuance of the MOC was caused by the filing of the EEO Complaint. Or put another way, are there any facts to suggest that, had Ms. James not filed her EEO Complaint, the MOC would have been scrapped rather than officially issued? As to this, there is not sufficient evidence. The process of drafting the MOC began in August and revisions and approvals were not complete until the day before its issuance. True, Cpt. Sayler previously drafted, but did not issue, an oral admonishment questioning Ms. James's job performance. But were Ms. James to argue that because Cpt. Sayler actually issued the MOC in this instance, he was acting out of retaliation, the Court would disagree. As for the oral admonishment, Cpt. Sayler testified that it was not his choice to abandon the reprimand, but it was the decision of supervisory civilian personnel. Here, the decision to issue the MOC was his, and there is insufficient record evidence to suggest that he would have issued it had Ms. James not filed her EEO Complaint.

Thus, the Court cannot find that there is evidence sufficient to establish pretext – either that reason for drafting the MOC was untrue or that its issuance was due to filing the EEO Complaint. Therefore, the Air Force is entitled to summary judgment on Ms. James's retaliation claim.

**CONCLUSION**

The Defendant's Motion for Summary Judgment (**#26**) is granted on all claims. The

Clerk shall enter judgment in favor of the Defendant on all of Ms. James's claims and close this

case.

Dated this 14th day of September, 2015.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge